UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

ELIHU HASSEL MCMAHON

       Plaintiff,                <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                                CV-01-6205 (DGT)

NEW YORK CITY BOARD OF EDUCATION,
et al[1].

       Defendants.

-------------------------------X

Trager, J:

    Plaintiff Elihu Hassel McMahon ("plaintiff") brings this
case pursuant to 42 U.S.C. § 1983 against his former employer,
the New York City Board of Education ("Department of Education"[2])
and individuals associated with the Department of Education
(collectively, "defendants"), alleging that he was retaliated
against for exercising his First Amendment right to free speech.
Defendants move to dismiss plaintiff's third amended complaint
pursuant to Rule 12 of the Federal Rules of Civil Procedure.

---

    [1] In the caption of his third amended complaint, plaintiff
names only the New York City Board of Education as a defendant;
however, in the body of his complaint, under the heading
"Parties," he additionally lists Thelma Baxter, Norman Wechsler,
Joseph DeJesus, Hollis Needleman, David Kroun, William Thompson,
Martha Szporn and Stanley Blumenstein.  These individuals have
been served in this case.  In the interest of reading plaintiff's
third amended complaint liberally, the listed individuals will be
considered parties.

    [2] Defendants note in their brief that the agency formerly
known as the Board of Education is currently known as the New
York City Department of Education.

## Procedural History

Plaintiff, appearing pro <u>se</u>, filed his initial complaint on September 10, 2001. On November 26, 2001, plaintiff filed an amended complaint alleging sex discrimination and violation of his First Amendment rights. On December 28, 2001, plaintiff's claim of gender discrimination was dismissed and plaintiff was ordered to amend his complaint "setting forth specific facts which would establish a causal connection between his speech and the adverse employment action taken against him" (the "Dec. 28, 2001 Order").

In response to the Dec. 28, 2001 Order, plaintiff timely filed a second amended complaint, to which he attached a number of exhibits, on February 25, 2002. Defendants moved to dismiss the second amended complaint in July 2002. Plaintiff then retained counsel, requested and was granted time to amend the complaint yet again, and filed a third amended complaint ("complaint") devoid of exhibits, in January 2003. Subsequently, defendants moved to dismiss the third amended complaint. Plaintiff then dismissed his counsel and opposed defendants' motion to dismiss pro <u>se</u>. While the third amended complaint is the subject of defendants' motion to dismiss, for the sake of completeness and in order to view the complaint in the light most favorable to plaintiff, the documents attached to the second amended complaint will also be considered.

## Background

Except where otherwise noted, the following facts are taken from the third amended complaint and the documents attached to the second amended complaint. Plaintiff began teaching in the New York City public schools in 1976. Since at least as early as 1987, plaintiff was a tenured chemistry teacher at the Bronx High School of Science ("Bronx Science"), one of New York City's most prestigious magnet schools. Plaintiff claims that he was a well-respected and devoted chemistry teacher at Bronx Science, where he garnered praise from the University of Chicago in 1987 and from the Massachusetts Institute of Technology in both 1987 and 1991 as an outstanding high school teacher. 2nd Am. Compl., Exs. 15-18. In June of 1989, plaintiff co-wrote a letter to the New York Times (the "Times") alleging that a 1987 theft of computers and science equipment at the school was inadequately investigated. 2nd Am. Compl., Ex. 1. The letter was published. 2nd Am. Compl., Ex. 1. Plaintiff alleges that on September 8, 1989, "as a direct result of" the letter, he was removed from his teaching position at Bronx Science and that defendants began a campaign of harassment against him. 3rd Am. Compl. ¶¶ 24-25. Plaintiff attached to his second amended complaint a newspaper article about himself that reports that he was suspended from teaching in December, 1989. 2nd Am. Compl., Ex. 12 (Steve McDonnell, <u>Cleared Teacher Forced to Do Nothing</u>, Bronx Press-

Review, April 2, 1992).

Plaintiff has not supplied any information about his working conditions for the intervening eight years, but alleges that on April 30, 1997, he was transferred to Theodore Roosevelt High School ("Roosevelt"). At Roosevelt, plaintiff was not assigned his own classroom, but was a substitute teacher who went to the classes of absent teachers. On October 30, 2000, a hearing was held pursuant to New York Education Law § 3020a, which provides for disciplinary hearings for public school teachers. The hearing transcript, which plaintiff attached to his second amended complaint, is informative in fleshing out some details of plaintiff's tenure at Roosevelt. 2nd Am. Compl., Ex. 10 ("Hearing Tr."). At the hearing, Roosevelt Principal Thelma Baxter ("Baxter") testified that plaintiff did not show up on the first day that he was assigned to Roosevelt and that when he did come to the school, he refused his assignment to teach special education for two days. Hearing Tr. at 77, 83. When plaintiff returned after a two-day absence, he was assigned to teach an English class. Id. at 83. According to Baxter, plaintiff taught the students chemistry instead. Id. at 86-87. Baxter testified that she had never heard of such a thing happening before. Id. at 88. Additionally, Baxter testified that plaintiff refused to follow the school policy of allowing students to come into the class late, instead sending them to the assistant principal's

4

office.  Id. at 87.  Baxter further testified that plaintiff also tried to exclude students from class for violating the school's dress code by wearing hats, rather than simply asking that they remove their hats, as required by school policy.  Id. at 133. She also testified that he said that he did not want to teach students who were not native English speakers.  Id. at 135.

On May 13, 1997, plaintiff sent the first of what became a barrage of letters to Baxter complaining about various issues at the school:

- May 13, 1997:  Complained about lax enforcement of the school dress code, attendance policies and student profanity.  2nd Am. Compl., Ex. 4.

- May 19, 1997:  Complained about being assigned to teach special education students, rebutted allegations of assault and expressed disappointment and discontent with his assignment to Roosevelt.  2nd Am. Compl., Ex. 5.

- May 23, 1997:  Complained about the general state of Roosevelt and Baxter's mismanagement:  "Discipline and attendance is extremely poor in your school . . . .  You made no attempt to address this very important issue."  2nd Am. Compl., Ex. 6.  Stated that Baxter falsely accused him of using corporal punishment.  Id.

- May 27, 1997:  Complained about inappropriate interactions between female students and security guards:

> Since my arrival at Theodore Roosevelt High
> School on 30 April 97, I have observed that some
> of your security personnel kiss, hug and touch
> many female students improperly.  Also, during
> lunch periods some security personnel accept
> student lunches from female students.  In light
> of recent media coverage of illicit
> student/teacher relationships, perhaps you
> should look closely at what is taking place in
> your school daily.
> [signed] Your brother in Christ,
> Elihu Hassell McMahon
>
> p.s.  At 1:40 pm three male security personnel
> were fraternizing with three female students in
> the library.

2nd Am. Compl., Ex. 8.

• June 5, 1997:  Requested First Step Grievance hearing

   pursuant to teacher's union contract with New York City.

   2nd Am. Compl., Ex. 7.

In late June 1997, Baxter gave plaintiff an unsatisfactory
evaluation for the school year.  Hearing Tr. at 92.  According to
Baxter, when she attempted to give plaintiff his annual
performance evaluation, "[h]e stormed out of the principal's
office" without taking the evaluation.  Id. at 95.  Baxter
followed plaintiff and told him to come back into her office.
Failure to do so, she said, would be insubordination.  Id. at 96.

At the October 30, 2000 hearing, Baxter also testified that
she did not believe plaintiff should be punished for
insubordination because of the letters he had sent to her, but
because of his actions at Roosevelt, which included bringing his
cat to school.  Id. at 162.  "What affected me most was Mr.

McMahon's behavior, his bringing his cat to school and his belittling behavior, the way he spoke to students . . . ." Id. at 163. Baxter testified that plaintiff brought his cat into school for several days because it needed medicine. Id. at 173. Baxter also testified that on two separate occasions plaintiff used corporal punishment, specifically, slamming the door on a student coming into class late and pulling a chair out from underneath another student. Id. at 176.

In late June 1997, plaintiff also began complaining to higher authorities about his situation.

- June 26, 1997: Letter to Joseph DeJesus, the superintendent of Bronx high schools, claiming that DeJesus told Baxter that plaintiff used corporal punishment on students and threatening legal action against DeJesus. 2nd Am. Compl., Ex. 9.

- September 4, 1997: Letter to then-Mayor Rudolph Giuliani stating, "I have been under siege by the Board [of Ed] since I wrote a letter to the New York Times." 2nd Am. Compl., Ex. 13. Implied that his 1997 reassignment to Roosevelt was in retaliation for the 1989 letter to the Times and complained about his treatment, especially the "indifference and . . . extreme hostility," he found at Roosevelt. 2nd Am. Compl., Ex. 13.

On September 10, 1997, disciplinary charges were brought

against plaintiff pursuant to New York Education law § 3020a. 2nd Am. Compl., Ex. 2.[3] Plaintiff wrote a second letter to Mayor Giuliani on December 2, 1997, reiterating his complaint that he had been prevented from teaching chemistry and reassigned in retaliation for the 1989 letter to the Times. 2nd Am. Compl., Ex. 12. Then, on December 17, 1997, the disciplinary proceedings against plaintiff were withdrawn for lack of evidence – students refused to testify and those who were interviewed gave conflicting accounts of the incidents. 2nd Am. Compl., Ex. 2.

By February 1998, plaintiff was back at Bronx Science teaching chemistry. 2nd Am. Compl., Ex. 3. On September 24, 1998, plaintiff's letter-writing campaign resumed with a missive to Superintendent DeJesus complaining that another chemistry teacher at Bronx Science was incompetent and that students' grades had been altered:  "It is quite clear that a white woman with a Ph.D can be ineffective and inefficient, but as long as the grades reflect so-called high standards, her teaching is satisfactory." Id. Plaintiff was suspended from teaching on September 8, 1998 and placed on the "ineligible list" until September 2001. Pl.'s Aff. in Opp'n to Def.'s Mot. to Dismiss at 2. Plaintiff further alleges that he was removed from his position as the junior varsity baseball coach from "September

---

[3] Although plaintiff does not lay out what the disciplinary charges were, it appears from his letters that he had been accused of using corporal punishment on students.

1998 through September 2001." 3rd Am. Compl. ¶ 31. He was not charged, however, until June 1999, when the Department of Education brought 18 allegations of misconduct and inefficiency against him. 2nd Am. Compl., 1. Plaintiff received an unsatisfactory performance evaluation, a "U" rating, for the 1997-98 school year.

On July 26, 2001, when the charges were eventually heard by a three-member panel - consisting of one impartial arbitrator, one panel member selected by the employee and one by the employer - they were unanimously dismissed. Decl. of Asst. Corp. Counsel Michele A. Molfetta in Supp. of Defs.' Mot. to Dismiss the Third Am. Compl., Ex. D ("Order to Show Cause") ¶¶ 15-16. Plaintiff had been suspended from teaching for the three years between when charges were brought and when they were dismissed. Order to Show Cause ¶ 16. After the charges were dismissed, plaintiff sought to have the "U" rating reversed. In November 2001, four months later, the rating was reversed to satisfactory. Order to Show Cause ¶ 19.

In September 2001, plaintiff returned to his previous teaching position at Bronx Science and simultaneously commenced this litigation. Order to Show Cause ¶ 19. A few months later, just before the Thanksgiving break, on November 21, 2001, plaintiff was again suspended, pursuant to an investigation of allegations of misconduct. Order to Show Cause ¶ 3. Although not

reflected in the complaint, plaintiff informed the court by letter that he was terminated by the Department of Education in December 2004. Plaintiff claims he was terminated for enforcing the dress code, while the Department of Education alleged he sexually harassed female students. Letter to Mag. J. Bloom, Dec. 22, 2004. Plaintiff was suspended from teaching from his November 2001 suspension until his December 2004 termination. As plaintiff put it:

> From 1989 to today [Oct. 2004], I have been suspended for all but a total of 30 months as the defendant has dragged me through one set of disciplinary proceedings after another. The defendant has thus been unrelenting in attempting to eliminate me from the schools ever since 1989, and I think it is fair to say that my letter that publicly embarrassed it was a factor in defendant's conduct . . . including the current efforts to terminate me.
>
> Aff. in Opp'n to Def.'s Mot. to Dismiss, 2.

## Discussion

Defendants move to dismiss plaintiff's complaint for the following four reasons: 1) failure to comply with the Dec. 28, 2001 Order; 2) plaintiff's pre-September 10, 1998 allegations are time-barred; 3) failure to state a First Amendment retaliation claim; and 4) failure to allege that a custom, practice or policy of the Department of Education deprived him of his constitutional rights. Each of these arguments will be examined in turn.

## Failure to comply with the Dec. 28, 2001 Order

Plaintiff was ordered to file an amended complaint so as to "allege with specificity what he complained of, when and to whom, and to connect these allegations to the adverse employment action against him." Dec. 28, 2001 Order. Defendants argue that the third amended complaint fails to provide the specifics that were required. Defendants cite Fed. R. Civ. P. 41(b): If plaintiff fails to comply with the orders of the court, his action should be dismissed. Defendants contend that because the letters included in plaintiff's second amended complaint are not protected speech they are insufficient to prove a claim under the First Amendment and that plaintiff therefore deliberately failed to include them in his third amended complaint. As defendants argue, plaintiff's filings require both defendants and the court to piece together a timeline of events and figure out the contents of the allegedly protected speech.

While the third amended complaint does include the exact date of the letter to the Times, that is the only speech it specifically identifies. <u>See</u> 3rd Am. Compl. ¶ 23-30. The complaint implies a causal connection between certain speech and subsequent disciplinary actions taken by the Department of Education, but does not provide sufficient details to determine whether the speech was protected, whether the disciplinary

actions closely followed the speech, or whether the actions occurred during the statute of limitations period.  For example, plaintiff alleges:

> Plaintiff informed Baxter of disciplinary problems at the school in which she was a principal, a 3020 proceeding was commenced.

3rd Am. Compl. ¶ 27.  In sum, plaintiff has failed to provide exact dates of when he sent letters; failed to specify to whom he sent the letters; and failed to show that his protected speech was the cause of defendant's actions.  For example, plaintiff claims that he "informed Baxter of disciplinary problems at the school," yet fails to say when.  3rd Am. Compl. ¶ 27.  Likewise, plaintiff claims that he "informed persons in authority of improprieties in the grading system," but fails to specify who these "persons in authority" are or when he communicated with them.  3rd Am. Compl. ¶ 28.  Clearly, plaintiff's allegations are insufficiently detailed and have failed to fulfill the requirements set forth in the Dec. 28, 2001 order.

Ironically, the second amended complaint, which plaintiff prepared without the benefit of counsel, makes more detailed allegations than the third amended complaint.  Nevertheless, the second amended complaint, too, fails to provide the requisite details or make the requisite causal connection.  Plaintiff merely states that since his 1989 letter he has been charged with misconduct five times.  2nd Am. Compl. at 2.  From the series of

letters included as exhibits, it is possible to determine to whom his speech was directed and its content. Yet plaintiff has failed to provide a timeline of speech and retaliation or show how his speech caused defendant's retaliation.

Nonetheless, by stitching together the third amended complaint and the exhibits attached to the second amended complaint, it is possible to understand the nature of plaintiff's allegations with sufficient clarity to overcome the low bar set forth in Fed. R. Civ. P. 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002); Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004). Accordingly, defendant's motion to dismiss for violation of Fed. R. Civ. P. 41(b) is denied.


**(2)**

**Statute of Limitations**

Defendants argue that plaintiff's action for First Amendment retaliation is limited to harm incurred after September 8, 1998[4] because in New York § 1983 claims are subject to a three-year statute of limitations. Patterson v. County of Oneida, N.Y., 375

---

[4] Because September 8, 2001 was a Saturday, plaintiff's September 10, 2001 filing of his complaint suffices to cover any adverse employment actions occurring on or after September 8, 1998.

F.3d 206, 225 (2d Cir. 2004).  Plaintiff replies that he has been

the subject of defendant's retaliatory animus ever since the 1989

letter.  Under the continuing violation exception, acts which

would otherwise be time-barred are admissible if they are

committed pursuant to a discriminatory policy.  See Lightfoot v.

Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); Quinn v.

Green Tree Credit Corp., 159 F.3d 759, 765-66 (2d Cir. 1998).

"The continuing-violation exception applies where there is

evidence of specific discriminatory practices, such as the

repeated use of discriminatory seniority lists or employment

tests."  Lightfoot, 110 F.3d at 907.

For the continuing violations exception to apply, the acts

alleged in the complaint must have been "continuous in time with

one another or with the timely acts [plaintiff] has alleged."

Quinn, 159 F.3d at 766.  Any discontinuity is "fatal" to a

continuing violation argument.  Id.  In this case, plaintiff has

alleged a series of discrete and non-overlapping adverse

employment actions, each separated in time by months in some

instances and years in others.  Accordingly, the continuing

violations exception does not apply to the instant case.  See

Plumey v. New York State, 389 F. Supp. 2d 491, 499 (S.D.N.Y.

2005) (refusing to extend the statute of limitations where the

plaintiff alleged discrete acts that were isolated in time); cf.

Fitzgerald v. Henderson, 251 F.3d 345, 362-63 (2d Cir. 2001)

14

(finding continuing violation where plaintiff alleged that the harassment she suffered was "ongoing," "repeated," "continuing," and occurring on a "day to day" basis).

Therefore, only that retaliation which the plaintiff suffered within the statutory period, between September 8, 1998 and the filing of plaintiff's complaint on September 8, 2001, may form the basis for a claim for relief. Plaintiff's transfer to Roosevelt and pre-September 8, 1998 suspensions are therefore excluded. They may, however, be considered as evidence of a causal connection between his 1989 letter to the Times and any post-September 8, 1998 retaliation that he suffered. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176-77 (2d Cir. 2005) (explaining that time-barred acts "may constitute relevant 'background evidence in support of [a] timely claim'" (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))).

### (3)

### First Amendment retaliation

"Where the plaintiff is a public employee alleging that he suffered an adverse employment action as retaliation for the exercise of his First Amendment rights, a plaintiff must initially show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on

matters of personal interest, (2) he or she suffered an adverse employment action, and (3) the speech was at least a substantial or motivating factor in the adverse employment action." Zelnick v. Fashion Institute of Tech., ___ F.3d ___, 2006 WL 2623923, at *7 (2d Cir. Sept. 14, 2006) (quoting Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005)); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); see also Heil v. Santoro, 147 F.3d 103, 109 (2d Cir. 1998) (stating that a public employee must show that the speech was a motivating or substantial factor in the adverse action taken by employer).

a.  **Protected speech**

To determine whether plaintiff's speech was constitutionally protected, it is first necessary to determine whether he, as a public employee, was speaking as a citizen or an employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitute does not insulate their communications from employer discipline." Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1959-60 (2006).  Allowing public employers to restrict speech "that owes its existence to a public employee's professional responsibilities does not infringe on any liberties the employee might have enjoyed as a private citizen." Id. at 1960; see also Ruotolo v. New York, No. 03-cv-5045, 2006 WL 2033662, at *3 (S.D.N.Y. July 19, 2006) (holding

that a report filed as part of plaintiff's official duties was "exactly" the sort of speech not protected under the First Amendment and that plaintiff therefore could not seek relief for adverse employment actions relating to the report). Therefore, under Garcetti, the "controlling factor" is whether plaintiff's speech is made pursuant to his official duties. Id.

In Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ., 437 F. Supp. 2d 235, 243 (D. Del. 2006), the district court found that a teacher's journal monitoring the absences of another teacher was not created pursuant to his official duties. Similarly, the letters written by plaintiff in the instant case were not part of his official duties, but were concerned with his personal well-being and grievances against the school administration. Therefore, the analysis proceeds to the next stage, an examination of plaintiff's First Amendment retaliation claim.

Defendants argue that none of plaintiff's speech, for which he allegedly suffered retaliation within the statutory period, was protected. Plaintiff counters that his speech, specifically the 1989 letter to the Times and the 1997 letters to Baxter, related to matters of public concern and was, therefore, protected. Plaintiff also cites his September 24, 1998 letter to Superintendent DeJesus with its allegations of grade-padding as instances of protected speech.

The determination of whether speech is protected is an issue of law.  See Morris, 196 F.3d at 110 (citing Connick v. Myers, 461 U.S. 138 (1983)).  In Connick, the Supreme Court held that a public employee's speech was protected if it touched on matters of public concern.  Connick, 461 U.S. at 146.  However, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  Id.  The central question in determining whether speech is protected is whether it "may be fairly characterized as constituting speech on a matter of public concern."  Morris, 196 F.3d at 110 (citing Connick, 461 U.S. at 146).

> [W]hen an employee speaks not as a citizen upon
> matters of public concern, but instead as an employee
> upon matters of only personal interest, absent the
> most unusual circumstances, a federal court is not
> the appropriate forum in which to review the wisdom
> of a personnel decision taken by a public agency
> allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147.

Moreover, when making its determination, the court should seek "to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Aviloge v. New York, No. 00-cv-5051, 2002 WL 1424589, at *9 (S.D.N.Y. June 28, 2002) (citing Iannillo v. County of Orange,

18

No. 00-cv-5072, 2002 WL 313202, at *6 (S.D.N.Y. Feb. 25, 2002)).

Thus, in <u>Ayiloge</u>, where the plaintiff complained of retaliation

for his expression of his opinion on Nigeria's political

situation and for speaking out about returning funds in clients'

accounts that exceeded the statutory limit to Social Security,

the court found that plaintiff's speech was protected because

"the issue involved was <u>not</u> one that related to his personal

working conditions." <u>Ayiloge</u>, 2002 WL 1424589, at *9 (emphasis

added).

This is clearly distinguishable from the instant case, in

which all of plaintiff's letters, with the exception of the 1989

letter to the Times, the May 27, 1997 letter regarding Roosevelt

security guards fraternizing with female students and the

September 24, 1998 letter with its allegations of grade-padding,[5]

---

[5] Although the Second Circuit does not appear to have
addressed whether allegations of grade inflation touch on matters
of public concern, other courts have concluded that they do.
<u>See, e.g.</u>, <u>Brown v. Armenti</u>, 247 F.3d 69, 79 (3d Cir. 2001) ("Had
the plaintiff been reprimanded for speaking regarding, for
example, grade inflation, a specific subject about which there is
demonstrated interest, he might have satisfied this [public
concern] test."); <u>Johnson v. Lincoln Univ. of the Commonwealth
Sys. of Higher Educ.</u>, 776 F.2d 443, 452 (3d Cir. 1985) ("It is
difficult to imagine a theme [grade inflation and standards of
education at black colleges] that touches more upon matters of
public concern."); <u>Eisen v. Temple Univ.</u>, No. 01-cv-4165, 2002 WL
1565331, at *1 (E.D. Pa. July 9, 2002) ("Plaintiff's speech as to
alleged grade inflation and academic fraud is, arguably,
protected."); <u>but see</u> <u>Dorsett v. Bd. of Trustees for State
Colleges and Univs.</u>, 940 F.2d 121, 124 (5th Cir. 1991)
(concluding that "concerns about academic standards, grade
inflation, and student competence . . . are common among
teachers," and that the evidence showed that the plaintiff's

are concerned solely with his own working conditions.  Although
the requirement is not that plaintiff have absolutely no personal
interest, that interest may not be the overriding one.  <u>Johnson
v. Ganim</u>, 342 F.3d 105, 114 (2d Cir. 2003) (holding that
plaintiff's letter about corruption in his union and in the
mayor's administration speech was "aimed at the alleged system-
wide epidemic" and protected even though plaintiff had a personal
stake in the outcome as a union member and government employee).
Thus, in <u>Haniq v. Yorktown Cent. Sch. Dist.</u>, 384 F. Supp. 2d 710,
722 (S.D.N.Y. 2005), the district court expressed "serious
doubts" that plaintiff's complaints to her union about the
school's failure to give her the statutorily required notice
before termination were protected because they were primarily
motivated and related to her personal desire to protect her own
job.  <u>Id.</u>  "Any motivation to advance a public interest was
tenuous and incidental."  <u>Id.</u>

"The key inquiry is whether the statements were made by
plaintiff in her role as a disgruntled employee or her role as a
concerned citizen."  <u>Id.</u>  In the instant case, with the exception
of the 1989 letter to the Times, the May 27, 1997 letter
regarding security personnel and the September 24, 1998 letter
regarding grade inflation, plaintiff was not speaking out on a

_____

motivation in speaking was "his personal concern about the work
environment and teaching assignments, rendering his speech
unprotected).

20

matter of public concern but complaining about individual instances that adversely affected him personally. As in <u>Hanig</u>, plaintiff is concerned only with the circumstances surrounding his employment and, therefore, is speaking as an employee rather than as a citizen commenting on matters of public concern. Because his speech was not primarily concerned with matters of public import, it does not rise to the level of protected speech under the First Amendment. <u>See</u> <u>Johnson</u>, 342 F.3d at 114; <u>Grillo v. N. Y. City Transit Auth.</u>, 291 F.3d 231, 235-36 (2d Cir. 2002) (holding that public employee's speech about the "unmanliness" of management techniques, class materials and instructions was not protected because there was no evidence that plaintiff's statements were uttered for any public purpose); <u>Cobb</u>, 363 F.3d at 107 (holding that some associational activity, such as union membership, which touches on a matter of public concern, is insufficient to satisfy the public concern requirements and merit First Amendment protection). For example, the Oct. 9, 1998 letter to Thompson is solely concerned with plaintiff's own employment situation and the outcome of charges against him before the School Board. Accordingly, only the 1989 letter to the Times, the May 27, 1997 letter regarding Roosevelt security guards fraternizing with female students and the September 24, 1998 letter with its allegations of grade-padding constituted protected speech.

**b.   Actionable retaliation**

Defendants argue that, even if plaintiff's speech was protected, his claim, nonetheless, fails because he has failed to show that he suffered an adverse employment action.  Def.'s Mot. to Dismiss, 18.  Plaintiff contends that his repeated suspensions from the classroom, for all but 30 months from 1989 to 2004, have been adverse employment actions.  Pl.'s Aff. in Opp'n to Def.'s Mot. to Dismiss, 2.  Moreover, plaintiff claims that the charges and resulting suspensions, which kept him out of the classroom for three years, are adverse employment actions.  Pl.'s Aff. in Opp'n to Def.'s Mot. to Dismiss, 8.

"In the context of a First Amendment retaliation claim, [the Second Circuit has] held that only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action."  Zelnick, 2006 WL 2623923, at *8 (quoting Washington v. Co. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)) (internal quotation marks omitted).  This standard is equivalent to that set forth by the Supreme Court in Burlington Northern and Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405, 2415 (2006), in which the Court held that "actionable retaliation" is that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  In this context, the Second Circuit has listed as possible adverse

employment actions "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," as well as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." Zelnick, 2006 WL 2623923, at *8.

The repeated charges and the extended time between when charges were brought and when hearings were held resulted in plaintiff being suspended from the classroom for extended periods of time. These measures and the ensuing suspensions fit within the definition of an adverse employment action.

### c. Causal connection

Defendants claim that plaintiff has failed to show a causal connection between his speech and retaliatory actions taken against him. Def.'s Mot. to Dismiss, 8-9. "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003) (quoting Dawes, 239 F.3d at 492)

"Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in

employment, or directly by evidence of retaliatory animus."
<u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 383 (2d Cir. 2003)
(quoting <u>Morris</u>, 196 F.3d at 110). "The speech must be at least
a substantial or motivating factor in the employer's adverse
action." <u>Dauber v. Bd. of Educ. of New York</u>, No. 99-cv-3931,
2001 WL 1246581, at *6 (quoting <u>Santoro</u>, 147 F.3d at 109). In
<u>Davis</u>, the Second Circuit held that the complaint sufficiently
supported an inference of a causal relationship where the
plaintiff alleged that prison officials from one prison "sent a
negative message" about him to officials at a second prison, that
adverse actions against him at the second prison began
immediately upon his arrival there and that the defendants
engaged in a "continuous course[] of retaliatory conduct." 420
F.3d at 354.

   Plaintiff here essentially alleges that all of the
retaliation against him springs from the 1989 letter:

> Shortly after the publication of this letter and as a
> direct result of the publication of the plaintiff's
> letter to the New York Times plaintiff was removed
> from his position at the Bronx High School of Science
> and defendant commenced <u>and continues to</u>
> <u>systematically harass and intimidate plaintiff</u> in an
> attempt to prohibit his right to freedom of speech
> and to remove him from his teaching position.

3rd Am. Compl. ¶ 24 (emphasis added).

   Although the pre-September 8, 1998 adverse employment
actions are time-barred, such that they cannot provide
independent grounds for relief, they may be considered as

relevant background evidence that "could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts." <u>Jute</u>, 420 F.3d at 176-77 (explaining that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act").

A causal connection between the 1989 letter to the Times, or even the May 27, 1997 letter, and the non-time-barred acts may be fatally attenuated, even if the intervening non-actionable acts are considered. However, a motion to dismiss is not the proper forum to evaluate the strength of plaintiff's case. Because he has alleged a causal connection between the 1989 letter to the Times (and the May 27, 1997 letter) and the post-September 8, 1998 adverse employment actions, plaintiff has cleared the low bar set by Fed. R. Civ. P. 8(a) and <u>Swierkiewicz</u>. <u>See</u> <u>Davis v. Goord</u>, 320 F.3d at 354.

As for a connection between the September 24, 1998 letter and any subsequent adverse employment actions, plaintiff had already been suspended from teaching as of September 8, 1998, a suspension which, as a matter of logic, could not have been in retaliation for a letter written more than two weeks later. It is unclear from his complaint when in September 1998 he was removed from his position as the junior varsity baseball coach;

therefore, from the complaint is impossible to determine whether this action was taken before or after he sent the September 24, 1998 letter. The next employment action after the suspension was the bringing of charges in June, 1999. On a motion to dismiss, it is too soon to tell whether the facts will show a causal connection between the letter and the charges. For now, plaintiff's allegation of a causal connection will suffice to forestall dismissal.[6] <u>Davis</u>, 320 F.3d at 354. Accordingly, the motion to dismiss the First Amendment retaliation claim based on the 1989 letter to the Times, the May 27, 1997 letter and the September 24, 1998 letter is denied.

### (4)

### Custom, practice or policy of the municipal defendant

Under § 1983, a municipality may not be held liable on a theory of respondeat superior. <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 568, 694-95 (1978). In order for a municipality to be liable under § 1983, the "plaintiff must show a causal link between an official policy or custom and plaintiff's injury," the alleged deprivation. <u>Raffaele v. New York</u>, No. 00-cv-3837, 2004 WL 1969869, at *21 (E.D.N.Y. Sept 7, 2004) (citing <u>Batista v.</u>

---

[6] Plaintiff alleges in his third amended complaint: "Plaintiff in the fall of 1998 informed persons in authority of improprieties in the grading system, a 3020 proceeding was commenced." 3rd Am. Compl. ¶ 28.

<u>Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983)). "Although this rule 'does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998).

Regarding pleading requirements for allegations of municipal liability for § 1983 violations, the Supreme Court has held plaintiffs to a standard no higher than that of Fed. R. Civ. P. 8(a), <u>i.e.</u>, a plaintiff need only provide the defendant with "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Leatherman v. Tarrant Co. Narcotics Intell. and Coordination Unit</u>, 507 U.S. 163, 168 (1993) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). In the instant case, plaintiff has failed to allege in so many words that it was a policy or custom that deprived him of his rights, nor has he alleged that an official with final authority ordered the alleged retaliation, such that his or her decisions "constitute the municipality's final decisions." <u>Rookard v. Health and Hospitals Corp.</u>, 710 F.2d 41, 45 (2d Cir. 1983). Plaintiff has, however, alleged that the Department of Education "commenced and continues to systematically harass and intimidate plaintiff in an attempt to prohibit his right to freedom of speech and to remove him from

his teaching position." 3rd Am. Compl. ¶ 24. At this stage of the litigation, it is unknown whether the officials who instituted the 3020a proceedings against plaintiff were so high-ranking that their decisions with respect to plaintiff were effectively the policy of the Department of Education, but discovery will likely reveal that information. Thus, assuming he can establish retaliation, there remains the possibility that plaintiff will also be able to establish an official policy. Accordingly, defendants' motion to dismiss plaintiff's claims against the Department of Education is denied.

## Conclusion

Defendant's motion to dismiss is granted in part and denied in part. Any claims based on alleged retaliatory acts that took place prior to September 8, 1998 are barred by the statute of limitations. Plaintiff's protected speech claims are limited to the 1989 letter to the Times, the May 27, 1997 letter and the September 24, 1998 letter. Defendants' motion to dismiss on grounds of failure to comply with the Court's order, failure to allege actionable retaliation and failure to allege a causal connection is denied.

DATED:     Brooklyn, New York
           December 12, 2006

                    _____/s/_____
                    David G. Trager
                    United States District Judge